UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

———————————

№ 21-CV-5121 (RER) (SDE)

———————————

MOHAMMAD KAUSER, CALVIN GARNER, RICHARD TODD, AND PATRICK OKOLIE

VERSUS

MHF 5TH AVE., LLC AND MHF PITKIN LLC

———————————

**MEMORANDUM & ORDER**

———————————

**RAMÓN E. REYES, JR., District Judge:**

Plaintiffs, employees at two Taco Bell franchises operated by Defendants, bring this wage-and-hour litigation alleging that Defendants have failed to pay them minimum and overtime wages in violation of the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL") and failed to provide wage notices and wage statements in violation of the NYLL. Defendants move for summary judgment on all claims. For the reasons that follow, Defendants' motion is granted in part and denied in part. Defendants' motion is granted as to Plaintiffs' FLSA minimum-wage claims, NYLL wage-notice and wage-statement claims, and plaintiff Patrick Okolie's claims to the extent they arise from his employment at the Howard Beach Taco Bell location. Defendants' motion is denied in all other respects.

## BACKGROUND

The following facts are taken from the parties' Rule 56.1 statements and relevant portions of the record and are undisputed unless otherwise noted.

1

Defendants MHF 5th Ave., LLC and MHF Pitkin LLC are separate entities that operate Taco Bell franchises in Brooklyn located at 5118 5th Avenue and 1165 Pitkin Avenue, respectively. (ECF No. 56, Defendants' 56.1 Statement of Facts ("Defs.' 56.1") ¶ 1; ECF No. 60, Plaintiffs' Rule 56.1 Counterstatement ("Pls.' 56.1") ¶ 1). Plaintiff Mohammad Kauser was employed at the Pitkin location from approximately May 2021 to early June 2022 as an assistant manager, and then at the 5th Avenue location from approximately June 2022 to early August 2022 also as an assistant manager. (Defs.' 56.1 ¶¶ 14–15; Pls.' 56.1 ¶¶ 14–15). Plaintiff Richard Todd was employed at the Pitkin location from April 7, 2022 to June 7, 2022, initially as a team member, then later as shift lead. (Defs.' 56.1 ¶¶ 35–36; Pls.' 56.1 ¶¶ 35–36; *see* ECF No. 61-3 ("Todd Dep.") at 39:21–41:4). Plaintiff Calvin Garner was employed at the Pitkin location from August 30, 2021 to October 7, 2021 as a manager. (Defs.' 56.1 ¶¶ 44, 46; *see* ECF No. 61-4 ("Garner Dep.") at 50:25–51:6). Patrick Okolie was employed at the Pitkin location from October 2021 through December 2021 as a general manager in training. (Defs.' 56.1 ¶¶ 26–27; Pls.' 56.1 ¶¶ 26–27).[1] Then, from December 2021 through December 2022, plaintiff Okolie was employed as the general manager of a different Taco Bell location: 135 79th Street in the Howard Beach neighborhood of Queens. (Defs.' 56.1 ¶ 29; Pls.' 56.1 ¶ 29; *see* ECF No. 61-2 ("Okolie Dep.") at 44:7–22). The Howard Beach location is not operated by either Defendant, though Plaintiffs contend that it is managed by some of the same corporate officers as the Pitkin and 5th Avenue locations. (Defs.' 56.1 ¶ 30; Pls.' 56.1 ¶¶ 1, 30).

---

[1] The parties disagree slightly as to Kauser's and Okolie's dates of employment; these are the approximate dates as recalled by the Plaintiffs, though Defendants are generally in the same ballpark. The specific dates do not matter for purposes of evaluating Defendants' motion for summary judgment.

On paper, Defendants maintain written policies that follow applicable FLSA and NYLL regulations, including, among other things, "payment of regular and overtime wages for all hours worked, vacation, personal leave, holiday hours, benefits attendant to employment, and breaks throughout the work day, including meal breaks." (Defs.' 56.1 ¶ 2). Defendants' employment policies require all employees to record the beginning and end of their shifts and meal breaks to ensure that they are paid for all hours worked; employees are prohibited from working off-the-clock. (*Id.* ¶¶ 2–5, 7–10). Employees are instructed to inform their manager, supervisor, or human resources of any uncompensated hours and are warned that working off-the-clock is grounds for discipline. (*Id.* ¶ 7). With one exception, each Plaintiff was compensated on an hourly basis at rates that exceeded the federal minimum wage, plus overtime at one-and-a-half-times the regular hourly rate for any hours exceeding forty in a single work week. (*Id.* ¶ 8). The exception is plaintiff Okolie while he was employed at the Howard Beach location, where he was paid a weekly salary. (*Id.* ¶ 34).

Plaintiffs contend that, notwithstanding Defendants' written policies, Defendants in fact maintained "time shaving" policies that required Plaintiffs to work uncompensated hours. (Pls.' 56.1 ¶ 2). These policies included requiring Plaintiffs to work about thirty minutes before they formally clocked-in and up to one or two hours after they formally clocked-out, as well as requiring employees to work through their meal breaks, which the Defendants docked as uncompensated time. (*Id.*) These policies were communicated to Plaintiffs verbally by Defendants' officers. (*Id.* ¶ 3). Additionally, Plaintiffs contend that employees were required to attend training sessions prior to the beginning of their employment, for which they were not paid. (*Id.* ¶ 2).

3

Plaintiffs bring claims for unpaid minimum and overtime wages under both the FLSA and NYLL and failure to provide wage notices and wage statements under the NYLL. (ECF No. 28 ("Am. Compl.") at 15–18). Following discovery, Defendants now move for summary judgment.

## LEGAL STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Frost v. N.Y.C. Police Dep't*, 980 F.3d 231, 242 (2d Cir. 2020) (citation and quotation marks omitted). "A fact is material if it might affect the outcome of the suit under governing law." *Id.* (citation and quotation marks omitted). In determining whether there is a genuine issue of material fact, a court evaluates the whole record, resolving all ambiguities and drawing all reasonable factual inferences in favor of the non-movant. *See id.* A nonmoving party can survive summary judgment only if there is sufficient evidence to permit a rational trier of fact to find in that party's favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986).

## DISCUSSION

Defendants' motion for summary judgment is granted with respect to plaintiff Okolie's claims arising from his employment at the Howard Beach location and Plaintiffs' FLSA minimum-wage claims. The motion is denied in all other respects.

I.  Claims Relating to the Howard Beach Location

Defendants move for summary judgment on plaintiff Okolie's claims arising from his employment at the Howard Beach location on the grounds that neither Defendant operated that location. (ECF No. 55 ("Defs.' Mem.") at 25; ECF No. 62 ("Defs.' Reply") at 9). Defendants' motion is granted.

In the operative complaint, Plaintiffs allege that Defendants operated the Howard Beach Taco Bell location, at which plaintiff Okolie was employed for a period. (Am. Compl. at 3, 5–6, 13). Defendants' motion for summary judgment disputes this. They argue that Plaintiffs have not identified any evidence to support a finding that either Defendant should be held to constitute Okolie's employer while he worked at the Howard Beach location. (Defs.' Mem. at 20; Defs.' Reply at 9). And in support, Defendants provide their own evidence in the form of an affidavit from a member of both Defendants, which states that the Howard Beach location "is not owned or operated by either Defendants." (ECF No. 58 ("Lower Decl.") ¶ 19; Defs.' 56.1 ¶ 30).

Plaintiffs do not respond to this argument in their opposition brief, (*see generally* ECF No. 59 ("Pls.' Opp'n")), though their counterstatement of material facts states that that the Howard Beach location, though a separate legal entity, is "managed by the same officers" as the two named Defendants, (Pls.' 56.1 ¶¶ 1, 30).

By failing to specifically oppose Defendants' motion for summary judgment, Plaintiffs have abandoned Okolie's claims stemming from his employment at the Howard Beach location. See *Jackson v. Fed. Express*, 766 F.3d 189, 197–98 (2d Cir. 2014) (holding that a district court may deem a counseled party's partial opposition to a motion for summary judgment to constitute abandonment of any non-opposed claims); *accord*

*Bryant v. Steele*, 462 F. Supp. 3d 249, 270 (E.D.N.Y. 2020) ("A party abandons a claim in the context of a summary judgment motion when she does not respond to arguments concerning that claim.").

Even if the Court were to look past Plaintiffs' abandonment and infer from Plaintiffs' counterstatement of material facts an argument that the Defendants should be held liable for Okolie's Howard Beach claims as joint employers, Defendants would still be entitled to summary judgment. Because there is no contention that Defendants exercised either formal or functional control over the employees of the Howard Beach location, the only potentially applicable joint-employer theory would seem to be the single integrated enterprise doctrine. Under the integrated employer doctrine, "an employee, who is technically employed on the books of one entity, which is deemed to be part of a larger 'single-employer' entity, may impose liability for certain violations of employment law not only on the nominal employer but also on another entity comprising part of the single integrated employer." *Arculeo v. On-Site Sales & Mktg., LLC*, 425 F.3d 193, 198 (2d Cir. 2005).[2] "A 'single employer' situation exists where two nominally separate entities are actually part of a single integrated enterprise." *Id.* (quotation marks and citation omitted). To determine whether distinct but closely affiliated entities constitute a single integrated employer for FLSA purposes, courts apply a four-part test, looking to evidence of

---

[2] The single integrated enterprise theory developed with the National Labor Relations Board in the collective bargaining context and has been extended to claims of employment discrimination. *See Murray v. Miner*, 74 F.3d 402, 404 (2d Cir.1996); *Brown v. Daikin Am. Inc.*, 756 F.3d 219, 226–28 (2d Cir. 2014). Although the Second Circuit has never endorsed the doctrine in the FLSA context, district courts within the Second Circuit have increasingly applied it "because the 'shared policy concerns underlying the doctrine and the FLSA urge the theory's application to FLSA claims.'" *Romualdo v. Guru Krupa 104 Corp.*, No. 19-CV-5188 (DG) (SJB), 2023 WL 6167614, at *5 (E.D.N.Y. Sept. 1, 2023) (quoting *Gonzalez v. Hanover Ventures Marketplace LLC*, No. 21-CV-1347 (ER), 2022 WL 193004, at *4 (S.D.N.Y. Jan. 21, 2022)); *see, e.g.*, *Chakma v. Sushi Katsuei, Inc.*, No. 23-CV-7804 (KPF), 2025 WL 429730, at *7 & n.5 (S.D.N.Y. Feb. 7, 2025); *Cao v. Wedding in Paris LLC*, 727 F. Supp. 3d 239, 275–76 (E.D.N.Y. 2024); *Hsieh Liang Yeh v. Han Dynasty, Inc.*, No. 18-CV-6018 (PAE), 2019 WL 633355, at 6 & n.6 (S.D.N.Y. Feb. 14, 2019).

"(1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control." *Brown v. Daikin Am. Inc.*, 756 F.3d 219, 226 (2d Cir. 2014) (citation omitted). "Although no one factor is determinative, control of labor relations is the central concern." *Id.* (quoting *Murray v. Miner*, 74 F.3d 402, 404 (2d Cir.1996)) (ellipsis omitted).

In their counterstatement of material facts, Plaintiffs have identified evidence that bears on just one of the four relevant factors: common management. By failing to identify any evidence bearing on the other three, including on the "most important prong" of control over labor relations, *Brown*, 756 F.3d at 227, even if Plaintiffs' papers could be read to put forward a claim based on an integrated enterprise theory of liability, Plaintiffs would have failed to raise a triable issue of fact. Accordingly, Defendants are entitled to summary judgment on plaintiff Okolie's claims arising from his employment at the Howard Beach location.

II. <u>Federal Minimum-Wage Claims</u>

Defendants move for summary judgment on Plaintiffs' FLSA minimum-wage claims on the grounds that Plaintiffs were compensated above the federal minimum wage for all weeks worked. (Defs.' Mem. 14–17). Defendants' motion is granted.

The FLSA establishes a federal minimum wage of $7.25 an hour. 29 U.S.C. § 206(a). "An employee cannot state a claim for a minimum wage violation 'unless [his] average hourly wage falls below the federal minimum wage.'" *Johnson v. Equinox Holdings, Inc.*, No. 13 Civ. 6313 (RMB) (JLC), 2014 WL 3058438, at *3 (S.D.N.Y. July 2, 2014) (quoting *Lundy v. Catholic Health Sys. of Long Island, Inc.*, 711 F.3d 106, 115 (2d Cir. 2013)). "An employee's average hourly wage is calculated 'by dividing his total

7

remuneration for employment . . . in any workweek by the total number of hours actually worked by him in that workweek for which such compensation was paid.'" *Cruz v. AAA Carting & Rubbish Removal, Inc.*, 116 F. Supp. 3d 232, 242 (S.D.N.Y. 2015) (quoting 29 C.F.R. § 778.109).

Defendants argue that, even crediting Plaintiffs' testimony regarding how much off-the-clock, uncompensated work they performed in an average work week, Plaintiffs' admissions regarding their pay dictate the conclusion that they were paid at an average hourly wage above the federal minimum for all weeks worked. The Court agrees. To illustrate, plaintiff Kauser admits that he was paid between $16.75 and $17.50 per hour for his on-the-clock hours. (Pls.' 56.1 ¶ 21). For Kauser to have suffered a FLSA minimum wage violation, his total number of hours worked in reality would need to be well over double the amount of on-the-clock hours logged[3]—*i.e.*, well over 100 hours of actual work in a week where he was only on-the-clock for fifty. There is no evidence in the record that Kauser ever came close to that ratio. By his own estimates, for a typical shift that was formally scheduled for ten hours, Kauser would average between two and three hours of additional, uncompensated work. (Pls.' 56.1 ¶¶ 21–22; ECF No. 61-1 ("Kauser Dep.") at 99:4–100:21). He, therefore, cannot succeed on a claim for violation of the federal minimum wage. The other Plaintiffs are in the same boat.

Plaintiffs do not dispute this analysis in their opposition. Instead, they argue only that they were not paid minimum wage for unpaid training sessions they were required to attend prior to the start of their employment with Defendants. (Pls.' Opp'n at 20). But Plaintiffs' complaint alleged only that Defendants forced Plaintiffs to engage in time

---

[3] $16.75 / 7.25 = 2.31$.

8

shaving by way of late clock-ins and early clock-outs; the complaint does not contain any allegations about mandatory, unpaid training sessions. (Am. Compl. ¶¶ 26–28, 40–42, 55–56, 71–72). Plaintiffs' claims relating to unpaid training sessions are thus new claims, introduced for the first time at summary judgment, that target completely different conduct by the Defendants, covering different time periods, and relying on a new theory of liability, from anything alleged in the complaint. Because "courts generally do not consider claims or completely new theories of liability asserted for the first time in opposition to summary judgment," the Court disregards Plaintiffs' arguments relying on the existence of unpaid training sessions. *Casseus v. Verizon N.Y., Inc.*, 722 F. Supp. 2d 326, 344 (E.D.N.Y. 2010) (citing *Lyman v. CSX Transp., Inc.*, 364 F. App'x 699, 701–02 (2d Cir. 2010) (summary order)); *see Smith v. City of New York*, 385 F. Supp. 3d 323, 347 n.24 (S.D.N.Y. 2019) ("A complaint cannot be amended merely by raising new facts and theories in plaintiffs' opposition papers, and hence such new allegations and claims should not be considered in resolving the motion." (citation omitted)). Accordingly, Defendants' motion for summary judgment on Plaintiffs' FLSA minimum-wage claims is granted.

III. Federal Overtime Claims

Defendants move for summary judgment on Plaintiffs' FLSA overtime claims on three grounds. *First*, Defendants argue that Defendants' pay records demonstrate that Plaintiffs were properly paid overtime wages for all hours worked, and that Plaintiffs' contrary recollections are unsupported and should be disregarded. (Defs.' Mem. at 17–22). *Second*, Defendants argue that, even if Plaintiffs performed any off-the-clock, uncompensated work, Defendants had no actual or constructive knowledge of it. (*Id.* at 19–21). And *third*, Defendants argue that Plaintiffs fall within the administrative and

9

executive employee exemptions to the FLSA's requirements for overtime pay. (*Id.* at 23–25). Defendants' motion is denied.

### A. Accuracy of Defendants' Pay Records

"To establish liability under the FLSA on a claim for unpaid overtime, a plaintiff must prove that he performed work for which he was not properly compensated, and that the employer had actual or constructive knowledge of that work." *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 361 (2d Cir. 2011). However, it is the employer's responsibility to "make, keep, and preserve" records of employee wages and conditions of employment. 29 U.S.C. § 211(c); *see also* 29 C.F.R. § 516.2. When an employer fails to keep accurate records, the burden-shifting framework established by *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946) applies. "[I]f an employer's records are inaccurate or inadequate, an employee need only present 'sufficient evidence to show the amount and extent of [the uncompensated work] as a matter of just and reasonable inference.'" *Kuebel*, 643 F.3d at 362 (quoting *Anderson*, 328 U.S. at 687) (alteration in original). If the employee does so, "[t]he burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." *Anderson*, 328 U.S. at 687–88.

Thus, the first step for the Court is to determine whether there exists sufficient evidence for a jury to conclude the Defendants "have failed to keep accurate or adequate records." *Santiago v. Thong Sook Corp.*, No. 19 Civ. 5747 (AT), 2021 WL 3423623, at *3 (S.D.N.Y. Aug. 5, 2021) (citation omitted). "In wages and hours cases in which payroll and time records are kept, the accuracy and adequacy of the records can be determined

10

in a variety of ways, including documentary evidence and testimony of witnesses." *McGlone v. Cont. Callers, Inc.*, 49 F. Supp. 3d 364, 371 (S.D.N.Y. 2014) (citation omitted).

Plaintiffs have met their burden in this regard. Plaintiffs each testified at their depositions that they were either implicitly or explicitly directed to falsify their time records by their supervisors. Mohammad Kauser testified that his supervisors required him to work extra hours after he formally clocked out after the end of his scheduled shift, and that he requested permission "every day" to clock back in but was denied. (Kauser Dep. at 80:17–88:1). Patrick Okolie testified that, while employed as a general manager in training, his supervisors "would make [him] punch out at the exact time [his] schedule says" his shift ended, but then require him to keep working, brushing off his complaints. (Okolie Dep. at 74:25–77:14). Richard Todd testified that he was instructed to clock out precisely at the end of each shift, even though complained to his supervisors that "there was no way" he could complete the amount of work assigned to him in that time and so was regularly working additional hours. (Todd Dep. at 60:14–62:9, 95:12–22, 96:13–99:4, 106:6–108:13). Calvin Garner testified that he regularly complained to his supervisors that his paystubs listed inaccurate hours but nothing was done (Garner Dep. at 60:9–61:21, 62:21–63:15), and that he was instructed by his supervisors to continue working after he had clocked out each shift, (*id.* at 86:2–89:5). This constitutes competent evidence from which a jury could conclude that Defendants' payroll records were inaccurate. The fact that the Plaintiffs were the ones to physically clock themselves in and out, rather than Defendants directly falsifying their time records, does not justify summary judgment for Defendants because "where the employee's falsifications [of his time records] were carried out at the instruction of the employer or the employer's agents, the

11

employer cannot be exonerated by the fact that the employee physically entered the erroneous hours into the timesheets." *Kuebel*, 643 F.3d at 363.

Next, the Court must determine whether there is sufficient evidence from which a jury could conclude "the amount of . . . uncompensated work 'as a matter of just and reasonable inference.'" *Kuebel*, 643 F.3d at 364 (quoting *Anderson*, 328 U.S. at 687). The Plaintiffs' "burden in this regard is not high." *Id.* at 362. It is well settled that a plaintiff may "meet this burden through estimates based on his own recollection." *Id.* A jury will ultimately be entitled to rely on "reasonable approximation[s]" from the evidence. *Perry v. City of New York*, 78 F.4th 502, 527 (2d Cir. 2023).

Plaintiffs have met their burden here as well. Each of the plaintiffs testified at their depositions as to the approximate number of hours they were required to work off-the-clock on top of a typical shift. Mohammad Kauser testified that he was always scheduled "on paper" for ten-hour shifts, typically five days a week. (Kauser Dep. at 99:4–100:21). In reality, he would usually begin working about half-an-hour before he formally clocked-in (*Id.* at 102:7–103:25), through his uncompensated thirty-minute meal break (*Id.* at 42:14–23, 61:7–63:7, 95:21–96:21), and for between one to two hours after he formally clocked-out, (*Id.* at 42:24–43:9, 75:21–23, 79:18–81:4). The other plaintiffs gave similar testimony bearing on the amount of time they were ordinarily obligated to work off-the-clock beyond their formal shifts. (Okolie Dep. at 59:16–25, 62:23–66:2, 80:9–83:6, 87:4–19; Tod Dep. at 48:22–53:6; Garner Dep. at 76:10–78:14, 84:6–85:25).

Defendants' principal objection is that the Court should not credit Plaintiffs' uncorroborated testimony, in light of their pay records showing that Plaintiffs did not work any uncompensated time. (Defs.' Mem. at 22; Defs.' Reply 4). But under the relaxed

*Anderson* standard, a plaintiff's own recollections can be enough. *Kuebel*, 643 F.3d at 364. Plaintiffs' testimony estimating the average amount of uncompensated work hours performed in a week relative to the amount of on-the-clock time logged is enough evidence for a jury to find the "just and reasonable inference" standard satisfied. *See id.*; *see, e.g.*, *Pest v. Bridal Works of N.Y., Inc.*, 268 F. Supp. 3d 413, 426–27 (E.D.N.Y. 2017) (denying summary judgment to defendants based on plaintiff's recollections, uncorroborated by documentary evidence, estimating the average number of uncompensated hours worked per week); *Lawrence v. NYC Med. Prac., P.C.*, No. 18 Civ. 8649 (GHW), 2023 WL 4706126, at *6–7 (S.D.N.Y. July 21, 2023) (same). Defendants' contrary evidence, including their written policies prohibiting off-the-clock work and their time records, may cast doubt on the credibility of Plaintiffs' testimony, but it does not entitle Defendants to summary judgment where Plaintiffs have each testified that they were directed not to record their off-the-clock hours, notwithstanding official company policy. *See Kuebel*, 643 F.3d at 365. Such credibility judgments must await trial.

  B. <u>Defendants' Knowledge of Uncompensated Work</u>

  As previously stated, to prevail on an FLSA overtime claim, a plaintiff must prove "that the employer had actual or constructive knowledge of" plaintiff's uncompensated work. *Kuebel*, 643 F.3d at 361. Plaintiffs have met their burden to prove a triable issue of fact on this element, based on the same testimony cited above tending to show that they were each directed to perform off-the-clock work by their supervisors.

  Defendants argue that because their written employment policies strictly prohibited off-the-clock work and Plaintiffs never reported any such work in Defendants' time keeping system, Defendants cannot be found to have had actual or constructive

13

knowledge of any uncompensated work Plaintiffs may have performed. (Defs.' Mem. at 20–21). But if Defendants had actual or constructive knowledge of Plaintiffs' off-the-clock work, neither the fact that Defendants formally barred such work nor the fact that Plaintiffs failed to report it in the timekeeping system defeats liability. After all, Plaintiffs assert Defendants effectively maintained an unwritten policy requiring Plaintiffs to falsify their own timesheets. The FLSA does not "permit an employer to obligate its employees to record their own time, have its managers unofficially pressure them not to record overtime, and then, when an employee sues for unpaid overtime, assert that his claim fails because his timesheets do not show any overtime." *Kuebel*, 643 F.3d at 364; *see also Perry*, 78 F.4th at 513 ("[W]e have long recognized that an employee's failure to report work the employer in fact knew about or required does not protect the employer from FLSA liability."). And to the extent these facts bear on the credibility of Plaintiffs' testimony that they were directed to work off-the-clock by their supervisors, once again, Defendants remain free to make such arguments before a jury. *See, e.g.*, *Kuebel*, 643 F.3d at 365 (fact that plaintiff "never lodged a formal complaint using [the defendant's] anonymous reporting hotline" may "conceivably hurt [the plaintiff's] credibility at trial" but "does not warrant summary judgment").

      C.    <u>Administrative and Executive Employee Exemptions</u>

"The employer bears the burden of demonstrating that an employee falls under a specific exemption" to the FLSA's overtime requirements. *Erdemir v. Allstate Marble & Granite, Kitchens & Baths Inc.*, 704 F. Supp. 3d 337, 364 (E.D.N.Y. 2023). Defendants invoke both the administrative and executive employee exemptions, (Defs.' Mem. at 23–25). *See* 29 U.S.C. § 213(a)(1). Both exemptions require, among other things, the

14

employee to meet a "salary basis" test, *see* 29 C.F.R. §§ 541.100(a)(1), 541.200(a)(1)—that is, be compensated on a "predetermined and fixed salary" that "does not vary with the precise amount of time he works," *Helix Energy Sols. Grp., Inc. v. Hewitt*, 598 U.S. 39, 45 (2023) (citation omitted); *see* 29 C.F.R. § 541.602(a). An exempt employee may nevertheless be compensated "on an hourly, a daily, or a shift basis, without . . . violating the salary basis requirement," if two conditions are met: (1) the employer must guarantee the employee at least the minimum weekly salary level "regardless of the number of hours, days or shifts worked," and (2) there must be a "reasonable relationship . . . between the guaranteed amount and the amount actually earned." 28 C.F.R. § 541.604(b); *see Helix Energy*, 598 U.S. at 46–47. "Even if the employee receives more than [the minimum weekly salary level] per week, if there is no evidence that the employee was *guaranteed* that amount, he does not meet the salary basis test." *Erdemir*, 704 F. Supp. 3d at 365 (emphasis in original).

Defendants admit that, with one exception, all Plaintiffs were compensated on an hourly, not a salary, basis during the duration of their employment.[4] (Defs.' 56.1 ¶¶ 8, 17–18, 28, 42, 45). And though Defendants contend that Plaintiffs received more than the minimum salary level each week, they do not argue, nor offer any evidence, that the plaintiffs were *guaranteed* that amount regardless of the number of hours actually worked. Accordingly, Defendants have not shown that Plaintiffs meet the salary basis test. *See Padilla v. Sheldon Rabin, M.D., P.C.*, 176 F. Supp. 3d 290, 302–03 (E.D.N.Y. 2016) (finding salary basis test was not met for employee compensated on an hourly basis

---

[4] The exception, as previously explained, is that plaintiff Okolie was paid a weekly salary while employed at the Howard Beach location. As discussed, plaintiff Okolie's claims arising from his employment at the Howard Beach location are dismissed on other grounds.

where defendant failed to offer any evidence that plaintiff was guaranteed a minimum weekly salary); *Erdemir*, 704 F. Supp. 3d at 365–66 (same, for employee compensated on a daily basis). Defendants are therefore not entitled to summary judgment on Plaintiffs' FLSA overtime claims on the grounds that Plaintiffs were exempt administrative or executive employees.

IV.  Remaining NYLL Claims

Defendants move for summary judgment on Plaintiffs' NYLL wage-notice and wage-statement claims,[5] arguing only that these claims should be dismissed because the plaintiffs were properly compensated, (Defs.' Mem. at 25–26). *See* N.Y. Lab. Law § 198(1-b), (1-d) (providing that "complete and timely payment of all wages" is an affirmative defense to wage-notice and wage-statement claims). Defendants also ask the Court to decline to exercise supplemental jurisdiction over Plaintiffs' NYLL minimum-wage and overtime claims in the event Plaintiffs' FLSA claims are all dismissed. (Defs.' Mem. at 26). These motions are granted in part.

Because Plaintiffs' FLSA overtime claims survive summary judgment, the Court retains supplemental jurisdiction over Plaintiffs' NYLL minimum-wage and overtime claims.

However, Plaintiffs do not have standing to bring NYLL wage-notice and wage-statement claims. As numerous courts have recognized, to have Article III standing to assert these NYLL claims, Plaintiffs must allege and prove some "downstream harm"

---

[5] NYLL § 195(1) requires employers to provide new employees a wage notice at the time of hiring that sets forth the employee's rate of pay and allowances, as well as various other information relating to the computation of the employee's pay. Section 195(3) requires employers to provide, for each pay period, a wage statement showing how that pay was computed, including deductions and allowances. The NYLL provides for statutory damages of up to $10,000 for failure to provide a wage notice and wage statements. N.Y. Lab. Law § 198(1)(b), (d).

16

caused by the failure to provide wage notices or wage statements. *E.g., Carcamo v. Tacos El Poblanito, Inc.*, No. 25-CV-5339 (BMC), 2026 WL 468822, at *1–2 (E.D.N.Y. Feb. 19, 2026) (citing *Guthrie v. Rainbow Fencing, Inc.*, 113 F.4th 300 (2d Cir. 2024)). Plaintiffs allege no such harm here separate from the harm the NYLL seeks to prevent: wage theft. *See id.* at *1; *see also Kasseris v. ZA & D Serv. Station, Inc.,* No. 23-CV-06281 (NCM) (SDE), 2026 WL 84037, at *16–18 (E.D.N.Y. Jan. 12, 2026). Accordingly, Plaintiffs lack standing to assert NYLL wage-notice and wage-statement claims, and those claims are dismissed without prejudice.

## **CONCLUSION**

For the foregoing reasons, Defendants' motion for summary judgment is granted in part and denied in part. Defendants' motion is granted as to Plaintiffs' FLSA minimum-wage claims, and NYLL wage-notice and wage-statement claims, as well as to plaintiff Patrick Okolie's claims to the extent they arise from his employment at the Howard Beach Taco Bell location. Defendants' motion is denied in all other respects. The parties shall file a proposed joint pretrial order in accordance with the Court's individual rules within sixty (60) days of this Order.

SO ORDERED.

<u>/s/ Ramón E. Reyes, Jr.</u>

RAMÓN E. REYES, JR.
United States District Judge

Dated: February 23, 2026
    Brooklyn, New York